## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAIME N.,
          *Plaintiff,*

          v.                                      No. 3:20CV676(MPS)

KILOLO KIJAKAZI, Acting Commissioner of the
Social Security Administration,[1]
          *Defendant*.

## RULING ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

In this Social Security case, Plaintiff Jaime N. appeals the Administrative Law Judge ("ALJ")'s determination that Plaintiff was only entitled to a closed period of Social Security disability benefits between April 5, 2014 and June 14, 2015. Plaintiff challenges the ALJ's finding that Plaintiff was not entitled to benefits after June 14, 2015 on the grounds that the ALJ erred (1) in assessing the medical evidence and therefore, failed to prove medical improvement and (2) in formulating Plaintiff's residual functional capacity. (ECF No. 16-1.) I agree with Plaintiff's first argument and remand the case to the Commissioner.

I assume familiarity with Plaintiff's medical history, as summarized in Plaintiff's Medical Chronology, ECF No. 16-2, and supplemented by the Commissioner, ECF No. 17-2, both of which I adopt and incorporate herein by reference. I also assume familiarity with the ALJ's opinion, the record,[2] and the five sequential steps used in the analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

---

[1] Plaintiff commenced this action in May 2020 against Andrew M. Saul, then the Commissioner of Social Security. ECF No. 1.  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d), Commissioner Kijakazi is automatically substituted for Andrew M. Saul as the named defendant. The Clerk of the Court is requested to amend the caption in this case accordingly.

[2] Citations to the administrative record are signified by "R" followed by a page number.

I.      **Standard of Review**

District courts perform an appellate function when reviewing a final decision of the Commissioner under 42 U.S.C. § 405(g). *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). A reviewing court will uphold an ALJ's decision unless it is based upon legal error or is not supported by substantial evidence. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

II.     **Discussion**

In the ALJ's partially favorable decision on Plaintiff's disability application, the ALJ found that Plaintiff met Listing 12.15, Trauma and Stressor-related Disorders, from April 5, 2014 through June 14, 2015, and therefore was entitled to benefits for that period. R. 25.[3] However, the ALJ also determined that as of June 15, 2015, the Plaintiff no longer met the listing because of medical improvement. *Id.* Plaintiff challenges this finding, arguing that the ALJ erred in considering the medical evidence.

A.      **Medical Improvement Standard**

"[W]hen the Commissioner determines that a claimant is disabled only for a closed period, such a finding must be demonstrated by substantial evidence of medical improvement in the claimant's impairment or combination of impairments such that the claimant is now able to engage

---

[3] The ALJ then proceeded through the sequential disability analysis to conclude that the Plaintiff retained the residual functional capacity to perform medium work with various limitations and that there were jobs in the national economy that he could perform. R. at 32. As a result, the ALJ determined that the Plaintiff was not disabled. Because I find that the ALJ erred at an earlier step in the analysis, I do not address the Plaintiff's arguments addressed to these subsequent findings by the ALJ.

in substantial gainful activity." *Nascimento v. Colvin*, 90 F. Supp. 3d 47, 53 (E.D.N.Y. 2015). "Medical improvement is defined as any decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable medical decision that he or she was disabled or continues to be disabled." *Carbone v. Astrue*, No. 08-CV-2376, 2010 WL 3398960, at *12 (E.D.N.Y. Aug. 26, 2010). "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, or laboratory findings associated with a claimant's impairments." *Id.*; *see also* 20 C.F.R. § 404.1594(b)(1). To determine whether medical improvement has occurred, the Commissioner "compare[s] the current medical severity" of the impairments to the medical severity of the impairments "at the time of the most recent favorable medical decision." 20 C.F.R. § 404.1594(b)(7). "If medical improvement is found to be related to an individual's ability to work, then the ALJ is required to carry out the sequential evaluation process that is used in an initial determination." *Nascimento*, 90 F. Supp. 3d at 54. "The burden rests with the Commissioner to demonstrate medical improvement relating to the ability to perform work." *Clarke v. Saul*, No. 3:19CV1825, 2021 WL 423745, at *4 (D. Conn. Feb. 8, 2021). *See Milliken v. Saul,* No. 19 CIV. 09371, 2021 WL 1030606, at *11 (S.D.N.Y. Mar. 17, 2021) ("Paramount to the medical improvement standard is the presumption that when the agency finds a claimant disabled, that disability will continue. Furthermore, unlike cases involving the five step sequential analysis, the burden is with the agency to prove that the claimant is no longer disabled."); *Carbone*, 2010 WL 3398960, at *12 (E.D.N.Y. Aug. 26, 2010) ("Once a claimant establishes the existence of a disabling condition, the medical improvement standard shifts the burden of proof to the Commissioner; a claimant is entitled to a presumption that the classification will not change unless the condition, governing statutes, or regulations change.")

### B.      Dr. Hymoff

Here, based on the testimony of Dr. Hymoff, a medical expert,[4] the ALJ found that

Plaintiff's impairments met Listing 12.15 for the period from April 5, 2014 through June 14, 2015.

Listing 12.15 provides:

> 12.15 Trauma- and stressor-related disorders (see 12.00B11), satisfied by A and B, or A and C:
> A. Medical documentation of *all* of the following:
> 1. Exposure to actual or threatened death, serious injury, or violence;
> 2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
> 3. Avoidance of external reminders of the event;
> 4. Disturbance in mood and behavior; and
> 5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).
> AND
> B. Extreme limitation[5] of one, or marked[6] limitation of two, of the following areas of mental functioning (see 12.00F):
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).
> OR
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

---

[4] SSA regulations permit an ALJ to request and consider medical expert opinions.  20 C.F.R. § 404.1527(f)(2)(iii) (2011) (stating that ALJs may request and consider medical experts' opinions regarding impairment's "nature and severity" and whether it equals listing requirements).

[5] A claimant has an "[e]xtreme limitation" in an area when he is "not able to function in th[e] area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § pt. 404, subpt. P, app. 1, 12.00(F)(2)(e).

[6] A claimant has a "[m]arked limitation" in an area when his "functioning in th[e] area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § pt. 404, subpt. P, app. 1, 12.00(F)(2)(d).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.15.

Dr. Hymoff testified that based on his review of the record, as of April 5, 2014, the Plaintiff suffered from PTSD and depression and met Listing 12.15. R. 21, 127-28. Specifically, Dr. Hymoff opined that the Plaintiff satisfied the criteria of Paragraphs A and B of the listing. R. 22, 128, 131. As to Paragraph B criteria, the areas of mental functioning a person uses in a work setting, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b), Dr. Hymoff testified, and the ALJ found, that the Plaintiff had a moderate limitation in understanding, remembering, or applying information; a marked limitation in the area of interacting with others; a marked limitation in the area of concentration, persistence, or pace; and a moderate limitation in the ability to adapt or manage oneself. R. 22, 130 - 31.

According to Dr. Hymoff, after March 2015, the Plaintiff no longer had marked limitations in either his ability to interact with others or to concentrate, persist or maintain pace. R. 22, 23, 131. The ALJ accorded significant weight to Dr. Hymoff's opinion, R. 24, adopting his finding of medical improvement, specifically his findings that the Plaintiff no longer had marked limitations as to Paragraph B criteria. R. 23, 26. To afford the Plaintiff "the benefit of the doubt," the ALJ found that Plaintiff's mental health impairments met Listing 12.15 through June 14, 2015, as opposed to March 31, 2015. R. 23.

C.    Carissa Mott, LPC

Plaintiff argues that the ALJ's medical improvement finding was flawed because he failed to consider the opinion of the Plaintiff's treating mental health clinician, Carissa Mott, LPC. R. 25, 1011-12. I agree.

The record indicates that the Plaintiff received individual psychotherapy at LifeBridge Community Services from March 10, 2015 through December 15, 2015. R. 997 – 1007. Ms. Mott,

a licensed professional counselor, saw him for six months, from July 2015 through December 2015. R. 1004 – 1007. Her notes indicate, among other things, that: he suffered from "intense" fears, (7/16/15 note, r. at 1004); he had "strong, intense fears of leaving the house" and his past trauma impacted his ability to function in a social setting (7/23/15 note, r. 1004); he suffered from "severe" PTSD symptoms (7/29/15 note, r. 1004); "irrational fears" drove his behavior (8/5/15 note, r. 1005); in September 2015 he reported that he was using cognitive behavioral training to manage his anxiety and was able to spend time at a friend's house but still had "distorted" thoughts that people would harm him (9/3/15 note, r. 1005; 8/26/15 note, r. 1005); he "struggles with intense fears of leaving the house" (10/6/15 note, r. 1006); and that in November 2015, he was able to use bus and was "proud of himself." (11/24/15 note, r. 1007.)

The record contains an undated form entitled "Medical Opinion Questionnaire (Mental Impairments)." R. 1011. On the top corner is Ms. Mott's handwritten name. *Id.* The form states that the Plaintiff was seen for 45 minute individual therapy sessions on a biweekly basis. *Id.* The questionnaire indicates that, among other things, the Plaintiff had "poor or no ability" to: carry out very short and simple instructions; maintain attention for a two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress. R. 1011-12. As to prognosis, the form stated "Client will struggle with re-experiencing extreme fears around people and inability to focus." R. 1011. On the bottom of the form was a handwritten statement that stated the Plaintiff "demonstrates severe symptomology, i.e., unable to focus, intense fear around people, deficits in social skills and inability to appropriately/effectively

6

complete tasks which significantly impact his ability to work.  At this time, clinically, client is unable to work and will continue to struggle in the future thus making finding and keeping employment near impossible."  R. 1012.  Immediately to the right and below this statement, the last name "Mott," followed by "LPC", appears in handwriting but the fax line obscures the first name.  *Id.*

The ALJ gave "no weight" to the questionnaire because it was "neither dated nor signed by anyone." R. 25.  The ALJ stated that although "Ms. Mott's name was handwritten in the corner of the first page . . . there was no indication when th[e] form was completed and what period it covered or if this therapist even completed th[e] form. "  *Id.*

The Commissioner maintains that the ALJ did not err in not considering the report because the reasons given – lack of a signature and date - were valid and that in any event, under the regulations at the time, the ALJ was not required to give the opinion "special consideration."  ECF No. 17-1 at 6.

The Commissioner is correct that Ms. Mott, as a licensed professional counselor, is not an "acceptable medical source."  *Wiggins v. Colvin*, No. 3:13CV1181, 2015 WL 5050144, at *2 (D. Conn. Aug. 25, 2015).  She is considered an "other source" and as such, under the operative regulations, the ALJ was not required to accord her opinion controlling weight.[7] 20 C.F.R. § 404.1527(f).  That said, an ALJ may not simply disregard opinion evidence from an "other source."  *Shand v. Colvin*, No. 3:15CV761, 2018 WL 389179, at *21 (D. Conn. Jan. 12, 2018). *See Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ

---

[7] The SSA subsequently revised the regulations regarding consideration of medical opinion evidence. Because the plaintiff's claim was filed before March 27, 2017, however, I apply the opinion regulations applicable before that date.  See ECF No. 16-1 at 3 (indicating plaintiff filed for benefits in April 2014); 20 C.F.R. § 404.1527 (setting forth rules for evaluating opinion evidence for claims filed before March 27, 2017).

erred in disregarding opinion of social worker "simply because it was the opinion of a social worker, not on account of its content or whether it conformed with the other evidence in the record"). SSA regulations recognize that "opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under [SSA] rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Social Security Ruling 06-3p, 2006 WL 2329939 *3 (S.S.A. Aug. 9, 2006).[8] "ALJs are instructed to consider the following factors when evaluating opinions from 'other sources,'" like Ms. Mott: "(1) whether the source examined the claimant; (2) whether the source had a treating relationship with the claimant; (3) the supportability of the opinions; (4) the consistency of the opinions with the record as a whole; (5) whether the source is a specialist; and (6) other factors." *Godin v. Astrue*, No. 3:11CV881, 2013 WL 1246791, at *4 (D. Conn. Mar. 27, 2013). *See* 20 C.F.R. § 404.1527(f); SSR 06–03p, 2006 WL 2329939, at *4–5 (explaining that these factors apply to the consideration of opinions from "other sources").

Despite being a non-acceptable medial source, Ms. Mott was a mental health professional who engaged in a regular treating relationship with Plaintiff during the second half of 2015. Her opinion was the only assessment in the record by a mental health treating clinician for that time period. The dearth of other medical evidence probative of the plaintiff's mental status after March 2015 was explicitly noted by Dr. Hymoff who, when asked by the ALJ whether there was sufficient evidence to allow him to form an opinion about the nature and severity of the plaintiff's mental impairments, responded that "[t]he problem I had with this record [is that] it looks to me after March of '15, I didn't see any psychiatric medical mental health records. . . . [S]o I can comment

---

[8] SSR 06-03p was in effect for claims filed before March 27, 2017 and was subsequently rescinded by Federal Register Notice Vol. 82, No. 57, page 15263. *Harrison v. Comm'r of Soc. Sec.*, No. 17-CV-98S, 2018 WL 3153399, at *3 (W.D.N.Y. June 28, 2018).

from the period of the onset until that date, but I do not know – I'm not able to comment on his mental impairments . . . beyond that time." R. 127. Dr. Hymoff went on to say that he saw the mental impairment questionnaire by Ms. Mott but because he did not know the time period it concerned, said he found it "a little confusing." R. 128. When the ALJ asked him about the Plaintiff's mental functioning in a work setting after March 2015, Dr. Hymoff conceded "I don't know. There's not enough information from that time for me to comment on ability to perform activities within a schedule, regular attendance. I have no really – just those minimal notes or improvement in the medical records." R. 132. Dr. Hymoff also was unable to offer an assessment as to the Plaintiff's ability to handle receiving criticism from a supervisor, stating "I mean I just wish I could answer that better" and reiterating that "I really don't see any real comment about his mental status other than these few comments in his medical records. I mean I suspect that it would be difficult for him to take criticism, but I can't really speak to that. I don't have enough information on that." R. 135. Similarly, when asked his opinion about the Plaintiff's ability to sustain pace, Dr. Hymoff testified that "It's hard for me to answer that given the limited information I have. I just suspect that he would do better in a self paced job." R. 138. When the ALJ asked Dr. Hymoff whether he thought the Plaintiff "would be able to maintain … a productive pace," Dr. Hymoff again responded that he did not have enough information to answer the question. *Id.*

Under these circumstances, if Ms. Mott authored the questionnaire – and two separate handwritten notations suggest she did --, her assessment of the nature and degree of Plaintiff's impairments is critically important. And the ALJ's dismissal of the opinion based on incompleteness was error. "[T]he Commissioner has an affirmative duty to fill any clear gaps in the administrative record," *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013), even when the claimant is represented by counsel. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Because

of the non-adversarial nature of a Social Security hearing, "[t]he duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004)).  "The duty to develop the record is particularly important where an applicant alleges he is suffering from a mental illness, due to the difficulty in determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace."  *Martinez v. Saul*, No. 3:19CV1017, 2020 WL 6440950, at *4 (D. Conn. Nov. 3, 2020) (internal quotation marks and citations omitted).

In this case, where the record evidence as to the severity of the Plaintiff's impairments was sparse, the absence of a date, and the apparent absence of a formal signature, on the assessment created a clear gap in the record the ALJ should have sought to fill.  His failure to do so was error. *Wynter v. Berryhill*, No. 19CIV05592, 2020 WL 5604821, at *12 (S.D.N.Y. Aug. 27, 2020) (holding that ALJ erred in assigning "no weight" to medical source statement because the signature on the statement was illegible and stating that "[t]he illegible signature on the statement created a clear gap in the record, which the ALJ had an affirmative duty to resolve."); *Shanan v. Commissioner of Social Security*, No. 3:19CV0545, 2020 WL 2404763, at *6 (N.D.N.Y. May 12, 2020) ("[T]he fact that the ALJ could not decipher the signature creates an ambiguity about which the ALJ should have inquired."); *Ransom v. Comm'r of Soc. Sec.*, No. 1:19CV00096, 2020 WL 2833003, at *3 (W.D.N.Y. June 1, 2020) (ALJ failed to develop the record by not attempting to obtain the missing page of a medical source statement and to discern the statement's author).

The Court cannot say that the ALJ's failure was harmless.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration.")  Ms. Mott,

10

a specialist in the area of mental health, examined Plaintiff numerous times, had a treating relationship with him, and opined that the Plaintiff was significantly limited by his mental impairments such that he could not sustain concentration and perform at a consistent pace.  R. 1012.  An ALJ's erroneous refusal to consider evidence "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered."  *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).  Because the Court is unable to determine that the ALJ would have reached the same conclusion regarding Plaintiff's medical improvement had he appropriately assessed what appears to be Ms. Mott's opinion, the Plaintiff's motion for remand is granted.[9]

## III.    Conclusion

For these reasons, the Plaintiff's motion for reversal or in the alternative for remand (ECF No. 16) is GRANTED to the extent that the matter is remanded to the Commissioner for administrative proceedings consistent with this Decision and Order.  The Commissioner's motion to affirm the Commissioner's decision (ECF No. 17) is DENIED.

IT IS SO ORDERED.


_____/s/_____
Michael P. Shea, U.S.D.J.


Dated: September 8, 2021
        Hartford, Connecticut

---

[9] I do not reach Plaintiff's other arguments "because upon remand and after a *de novo* hearing, [the ALJ] shall review this matter in its entirety." *Delgado v. Berryhill*, No. 3:17CV54(JCH), 2018 WL 1316198, at *15 (D. Conn. Mar. 14, 2018) (citation omitted).